W.V. Bernie Siebert
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO  80202
(303) 299-8222
(303) 298-0940 (fax)
bsiebert@sah.com

Sharon M. Rose
LAVERY & ROSE, P.C.
P.O. Box 890
Evanston, WY  82930
(307) 444-4200
(307) 444-0559 (fax)
srose@evanstonlaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | | |
|---|---|---|
| PAUL A. MUMBY, ERIC HOLTZCLAW, WILLIAM G. JOHNSON, JOHN PAZEJ, JR., RITTA PEAVLER, JAMES G. RAUCH, JEROME G. RAUCH, DAVID REDDIN, and others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 09-CV-77-D |
| v. | ) ) | |
| PURE ENERGY SERVICES (USA), INC., | ) ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Pure Energy Services (USA), Inc. (hereinafter "Pure Energy" or "Defendant") and for its brief in support of its Motion for Partial Summary Judgment states as follows:

INTRODUCTION

Plaintiffs commenced this civil action on April 6, 2009.  29 U.S.C. §216(b) provides in part: "No employee shall become a party Plaintiff to any such action unless he gives his consent in writing to become such a party when such consent is filed with the Court in which such action is brought." 29 U.S.C. §256 states that an action is commenced when the written consent to become a party Plaintiff is filed in the Court in which the action is brought.  Here, Plaintiffs filed their consents to join the civil action at the time the action was commenced.

29 U.S.C. §255 provides for a limitations period of two years from the date an action is commenced unless the violation is considered "willful." 29 U.S.C. §260 provides that if an employer demonstrates that its actions were in good faith and that it had reasonable grounds for believing that the act was not a violation of the Fair Labor Standards Act, the Court may refuse to award liquidated damages.

Plaintiff cannot prove that the actions of Defendant were willful.  Therefore, a two year period of limitation applies.  Defendant can demonstrate that its actions were in good faith and that it had reasonable grounds for believing that its conduct did not violate the Fair Labor Standards Act and therefore, an award of liquidated would not be proper.

FACTUAL BACKGROUND

Defendant is an oil field services company and conducts and has conducted oil field services relating to new or existing natural gas wells and oil wells and related operations in the Rocky Mountain Region of the United States.  Defendant has field operations situated in Canada

and Evanston, Wyoming, Grand Junction, Colorado and Minot, North Dakota." Comp. ¶7.[1]

Defendant is an employer as defined by 29 U.S.C. §203(d). Comp. ¶5. Plaintiffs are employees

within the meaning of 29 U.S.C. §203(e). Comp. ¶4.

　　　　Previously, in Case No. 07-CV-127J, Judge Johnson granted Partial Summary Judgment

concerning liability in a case involving former employees of Defendant working in the same job

classifications as those in the instant case and Defendant (hereinafter "Pure I").[2] The claims

in that case and the claims in the instant case are believed to be the same. In his Order,[3] Judge

Johnson stated "…the Court finds the Plaintiffs were paid a day rate for each day worked

regardless of hours worked. The Plaintiffs were paid a day rate as set forth in 29 C.F.R.

§778.112 and any overtime should be calculated based on that regulation." Here, Plaintiffs in the

instant case executed offer letters identical to those executed by employees in the earlier case.

See, for example, documents attached as Exhibits B, C and D. Those documents show that

Plaintiffs were paid a "day rate" based on a calculation of eight hours at straight time and four

hours of overtime per day. Plaintiffs were scheduled to work twelve hour shifts, seven days a

week, three weeks on and one week off.

　　　　In Pure I, Plaintiffs argued that they were being paid a day rate and that as such the

payment of any overtime pursuant to the day rate as set forth in the offer letters was illusory.

According to Plaintiffs, Defendant needed to total the amounts paid to the employee during the

week and divide that number by the total number of hours worked to come up with a "regular

---

[1] Citations to the Complaint will be referenced as "Comp." followed by the paragraph number where the information
is contained. For purposes of this Motion only, the accuracy of Plaintiff's Factual Allegations are considered to be
true.
[2] The same counsel represented plaintiffs and defendant in Pure I as in the instant case. The same counsel
participated in depositions and other discovery in that case.
[3] The Order is attached as Exhibit A.

rate." The regular rate would be divided by two to determine the half-time rate which was

payable on all hours over 40 in addition to the day rate received by the plaintiffs. The Court

stated:

> The Court agrees with Plaintiffs' arguments. The FLSA allows employers to pay
> a day rate. It sets forth the calculation on how to apply overtime to it. The FLSA
> does not allow employers to pay a day rate and not pay overtime. Pure
> [Defendant] paid a day rate. The day rate did not itemize or make specific
> overtime payments. The Plaintiffs were paid a single amount per day billed to
> clients. That amount did not waiver based on the actual hours worked. The
> Plaintiffs' paystubs reflected a day rate of pay. The offer letters from Pure
> [Defendant] only acted as a guide to show how the day rate was originally
> conceived. Pure enacted a "day rate" pay scheme that did not pay overtime, in
> violation of 29 C.F.R. §778.112. It is undisputed that the pay scheme illegally
> underpaid Plaintiffs under either a "day rate" or "hourly rate" calculation. In
> reality, the pay scheme was a "day rate" scheme and the Plaintiffs are entitled to
> be compensated for overtime work based on 29 C.F.R. §778.112. The day rate
> only applies to the first forty (40) hours in a work week and additional
> compensation shall be paid for all hours worked over forty (40) in a work week at
> a rate one-half times the "regular rate" as set forth in 19 C.F.R. §778.112.

The genesis of the pay rate is unknown. It is believed to have been imported from

Canada where the day rate is lawful and no additional overtime is payable.

Pure Energy Services (U.S.A.) hired its first executives to run the United States company

on or about June 6 or 7, 2005. Debonis TR. 7:16-20.[4] Prior to that time, the U.S. business was

being operated from Canada. Debonis TR. 7:22-23. Defendant began hiring people to help

manage the U.S. business in December 2005 and opened an office in April 2006. DeBonis TR.

9:14-22. In approximately November or December, 2005, there were discussions concerning

---

[4] References to the deposition transcript of Paul Debonis shall be denoted "Debonis" followed by TR followed by
the page number, a colon and the line numbers on which the testimony appears. Relevant pages from the deposition
transcript of Debonis are marked Exhibit E.

4

transitioning the payroll for employees working in the U.S. to the new U.S. offices rather than having the payroll function performed in Canada.  Debonis TR.10:20-25; 11:1-3.  It was not until sometime after mid-December, 2005, that there were any discussions concerning how employees were being compensated.  Debonis TR. 16:5-12.  In December, 2005, Cindy Rucker was hired to be in charge of the payroll operations in the United States.  Debonis TR. 19, 20.  After Ms. Rucker was hired, she raised a question concerning the legality of how employees were compensated.  Mr. Debonis told her that if she had any questions concerning the matter, she should contact a labor law lawyer named Paul Hurcomb in Colorado Springs, Colorado.  After Ms. Rucker conferred with Paul Hurcomb, she spoke with Mr. Debonis regarding changing the offer letter being used to advise employees of the calculation of their pay and changing the way Defendant would set forth the methodology used to calculate the wages it paid its employees.  Debonis TR. 26:10-16.  Ms. Rucker received legal advice from Mr. Hurcomb regarding how wages were to be set forth in the offer letter and paid by Defendant.  She was instructed by Mr. Debonis to follow Mr. Hurcomb's advice.  DeBonis TR. 33:2-13.  Ms. Rucker did make the changes pursuant to the legal advice she received from Mr. Hurcomb.  Debonis TR. 35:3-8.

According to Ms. Rucker, she first had a discussion with Mr. Debonis concerning the "day rate" in late December, 2005 or early January, 2006.  Rucker TR. 21:3-9.[5]  Ms. Rucker was questioning the legality of the day rate and whether that was the correct way to pay the field employees.  Rucker TR. 21:12-15.  At that time, Ms. Rucker was not aware of the overtime threshold (40 hours).  That's why she questioned the day rate.  Rucker TR. 22:12-15.  Ms. Rucker was told by Mr. Debonis to look into the matter and to hire a law firm in Colorado

---

[5] Relevant pages from the deposition transcript of Cindy Rucker are attached as Exhibit F.

EMPLOY\488443.1

Springs. Rucker TR. 23:4-10. She contacted the law firm in Colorado Springs in early January 2006. Rucker TR. 24:15-17; 21-23. Her first contact with lawyer, Paul Hurcomb was by telephone on or about January 4, 2006. Rucker TR. 34:4-6; 35:21-22. Hurcomb assured Ms. Rucker that he would review the materials she sent. Rucker TR. 36:9-10; 14-16. Exhibit G is a list of the documents that were sent to Hurcomb.[6] Rucker TR. 39:1-7. Ms. Rucker discussed the day rate with Mr. Hurcomb in a conversation on January 9, 2006. Rucker TR. 45:10-14. Mr. Hurcomb told Ms. Rucker that the day rate was "okay as long as we [Defendant] broke it out with a regular and an overtime rate." Rucker TR. 45:15-18. Ms. Rucker sent an email (Exhibit H) following her conversation with Mr. Hurcomb stating that "I have confirmed with an employment law attorney that we are paying our non-exempt (field) employees correctly using the day rate as long as we document that the day rate includes a regular rate for eight hours and overtime rate for the additional time (as long as we don't exceed 12-hour shifts)." She told Mr. Hurcomb that field employees worked 12 hour shifts, seven days a week. Rucker TR. 46:19-25; 47:1. Rucker had specifically asked Hurcomb to make sure that the compensation system of Pure Energy was legal and that it would withstand an audit from the U.S. Department of Labor. Exhibit G. Following her discussions with Mr. Hurcomb, she felt better as she believed that Defendant was paying its employees correctly. Rucker TR. 50:22-25; 51:1-9.

According to Mr. Hurcomb, he was first contacted by Ms. Rucker in January of 2006. Hurcomb TR. 7:5-13.[7] She first raised the issue of the Fair Labor Standards Act on or about

---

[6] Exhibits E-J were all a result of discovery in Pure I.
[7] Relevant pages from the deposition transcript of Paul Hurcomb are attached as Exhibit I.

January 4, 2006 when she inquired about compliance with the Act.  Hurcomb TR. 8:3-7.  Her

inquiry concerned the manner and method by which Defendant was paying its field employees.

Hurcomb TR. 8:8-12.  Mr. Hurcomb did not perform any legal research regarding day rates or

the Fair Labor Standards Act.  Hurcomb TR. 14:21-23.  Mr. Hurcomb advised Ms. Rucker that if

Defendant set forth the calculation of the day rate shown in the offer letter, Defendant would be

in compliance with the Fair Labor Standards Act.  Hurcomb TR. 15:22-25; 16:1-8.  Mr.

Hurcomb understood that field employees worked 12 hours per day.  Hurcomb TR. 17:20-25;

18:1-3.  He also understood that employees worked seven days a week on a 21 day rotation.

Hurcomb TR. 18:4-7.  Ms. Rucker told Mr. Hurcomb that Defendant paid its employees a day

rate but he does not recall whether Ms. Rucker told him that any additional overtime

compensation above the day rate was paid and Mr. Hurcomb did not ask that question.  Hurcomb

TR. 19:13-20.  Mr. Hurcomb understood that Ms. Rucker was making her inquiries so in case the

company was ever audited [by the U.S. Department of Labor] that it could prove that it paid its

field employees correctly.  Hurcomb TR. 23:11-17; Document 001055.  At that time, Mr.

Hurcomb believed that he took the steps necessary to assure the company that if it got audited, it

could prove it paid its field employees correctly.  Hurcomb TR. 23:18-24.  Mr. Hurcomb

believed that Ms. Rucker was aware of the requirement that employees be paid overtime after 40

hours, however, he did not ask whether the company actually paid overtime for all hours worked

over 40.  Hurcomb TR. 27:16-25; 28:1-3.  Mr. Hurcomb revised the offer letter used by

Defendant to reflect what he believed was compliance with the Fair Labor Standards Act.

Hurcomb TR. 44:23-25; 45:1-4.  Mr. Hurcomb was aware that employees were paid the same

day rate for a sixth and seventh day worked in the same work week.  Hurcomb TR. 45:21-24.

7

Mr. Hurcomb did not see any need to include any language in the offer letter concerning weekly overtime in addition to the day rate. Hurcomb TR. 46:7-10. Mr. Hurcomb did not advise Ms. Rucker that she would have to recalculate if people worked more than five days in a week. Hurcomb TR. 46:11-15. Mr. Hurcomb suggested that the offer letter be revised to reflect that the day rate was calculated on the basis of eight regular straight time hours and four overtime hours. Hurcomb TR. 46:21-25; 47:1-3. Mr. Hurcomb did not go through any hypothetical calculations with Ms. Rucker with regard to sixth or seventh day overtime. Hurcomb TR. 47:6-10. The only calculations that Mr. Hurcomb performed were to compute what the hourly rate needed to be for eight straight time hours and four overtime hours to equal the $195.00 day rate which was shown on the offer letter which he was reviewing. Hurcomb TR. 47:11-18. Exhibit J.

<u>UNDISPUTED FACTS</u>

Based on the foregoing facts, the following are the undisputed facts.

1.    Pure Energy Services (USA) Inc., is a Colorado corporation and a wholly owned subsidiary of Pure Energy Services, Ltd., a Canadian Corporation. Pure Energy Services, Inc. has its primary place of business in Englewood, Colorado.

2.    Pure Energy Services (USA) Inc. ("Pure") is an oil field services company that conducts oil field services to new or existing oil wells, natural gas wells and related operations in Colorado, Wyoming and North Dakota.

3.    In the operation of its business, Pure employees non exempt field employees and supervisors.

4.      From the commencement of its operations in the United States, Pure paid its field

employees a day rate, which is lawful in Canada.

5.      Pure hired its first executives to run the U.S. operations in June, 2005.

6.      The first executive hire was Paul Debonis ("Debonis") who was hired to be the president

of Pure.

7.      In December, 2005, Debonis began hiring other employees to help manage Pure.

Employees signed an "offer letter" from Pure which set forth their pay and benefits.

8.      From the time Pure began its operations in Cindy Rucker ("Rucker") to lead the effort to

transition the payroll function for Pure from Canada to the United States.

9.      In December, 2005, or early January 2006, Rucker first raised the issue of the legality of

paying non exempt employees a day rate.

10.     When Rucker asked Debonis about the legality of the day rate method of compensating

the non exempt employees, Debonis told her to contact Paul Hurcomb, ("Hurcomb"),  a labor

law attorney in Colorado, Springs.

11.      Rucker contacted Hurcomb about the legality of the day rate method of paying

employees on or about January 4, 2006.

12.     Rucker told Hurcomb that she want to make certain that Pure would be legal in its

compensation of its employees so it could prove that in the event Pure was ever audited by the

Department of Labor.

13.     Hurcomb was aware from Rucker that the non exempt employees of Pure work 12 hour

shifts, 7 days a week with a schedule of 3 weeks on and one week off work.

9

14.   Hurcomb was aware that non exempt employees were paid the same day rate for all seven days worked in the workweek.

15.   Hurcomb advised Rucker that Pure would be in compliance with the law if it showed the calculation of the day rate on the offer letter to employees to be 8 hours at a straight time hourly rate and 4 hours at the overtime rate of time and one-half the hourly rate so as to equal the day rate amount.

16.   Hurcomb revised the offer letter of Pure that was given to employees to reflect that the day rate they received was calculated on the basis of 8 straight time hours and 4 overtime hours.

17.   Hurcomb did not see any need to include any reference to a weekly overtime in the offer letter.

18.   Hurcomb did not ask whether Pure paid overtime for hours worked in excess of 40 in the workweek.

19.   Hurcomb did not advise Pure that the wages would have to be recalculated if a non exempt employee worked more than 40 hours in any workweek.

20.   Hurcomb did not review any hypothetical calculations with regard to the sixth or seventh day worked in a workweek.

21.   Pure followed the legal advice it received from Hurcomb.

22.   Pure had no reason to believe that the advice it received from Hurcomb was erroneous.

23.   Rucker advised others in writing that she had confirmed with a labor law attorney that Pure was correct in paying employees a day rate so long as the calculation of the day rate as 8 straight time hours and 4 hours of overtime was shown on the offer letter.

24.     After speaking with Hurcomb, Rucker believed that Pure was paying its employees correctly.

## ARGUMENT

Plaintiffs cannot meet the high burden of proof that any violation of the FLSA by Defendant was "willful." Defendant sought the advice of competent labor law counsel and acted in conformity with that advice. Similarly, Plaintiffs are not entitled to liquidated damages as Defendant acted in "good faith" and, based on advice of counsel it received and it "had reasonable grounds for believing that the act or omission is not a violation of the FLSA."

1.      <u>Plaintiffs cannot prove willfulness.</u>

Section 255 of the FLSA provides that the normal limitations for a FLSA action is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." Here, the normal period of limitations would be from April 6, 2007 until October 2007 when Defendant changed its compensation system. Comp. ¶ 20. If a three-year period of limitations were to apply, the limitations period would go back from date the action was commenced to April 4, 2006. However, as noted above, in order to be entitled to the three-year period of limitations, Plaintiffs bear the heavy burden of proving that the actions of Defendant were willful. This, Plaintiffs cannot do.

In order to demonstrate the Defendant willfully violated the FLSA, Plaintiffs must prove "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The Supreme Court stated that in determining whether an employer's actions were

11

willful, the term should be viewed as "synonymous with such words as voluntary, deliberate, and intentional." *Id.*

The Tenth Circuit also addressed this issue recently n *Fowler et al. v. Incor*, 279 Fed. Appx. 590, 2008 WL 2019598 (10th Cir. 2008). The Court was reviewing the grant of summary judgment to the Defendant on the issue of willfulness. The Court stated:

> Regarding the statute of limitations, we applied the same standard as the district court and review whether the employees' evidence, viewed in the light most favorable to them, was sufficient to create a genuine issue of material fact as to whether Incor acted willfully, i.e., whether it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the FLSA]." *McLaughlin*, 486 U.S. at 133, 108 S. Ct. 1677; *See* also *Gilligan*, 986 F.2d at 413. We agree that the evidence failed to create a triable issue of fact and that Incor was entitled to judgment as a matter of law. Although cases involving knowledge, motive, and/or intent are not well suited to summary disposition, *Baum v. Great West Cities Inc.*, 703 F.2d 1197, 1210-11 (10th Cir. 1983), this does not mean that summary judgment is never proper. Instead, the evidence, viewed in the light most favorable to the employees, showed that Incor relied on the advice of industry consultants and state officials in implementing a policy that was in wide-spread use in Oklahoma and elsewhere. Admittedly, Incor did not consult a lawyer or investigate the lawsuits against other service providers, however this is not enough to prove recklessness. Therefore, we affirm the court's summary judgment order for the application of a two-year statute of limitations.

The Tenth Circuit held that reliance on the advice of industry consultants and state officials was sufficient to demonstrate a lack of willfulness. Additionally, the Court clearly indicated that consultation with a lawyer would provide even greater evidence of a lack of willfulness.

In *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544 (10th Cir. 1988), the Court noted that the Supreme Court had addressed the issue of willfulness under the Age Discrimination in Employment Act (which is based on the Fair Labor Standards Act) in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 85 L.Ed. 2d 523 (1985). This case was the basis for

12

the Supreme Court's subsequent decision in *McLaughlin* concerning willfulness pursuant to the FLSA. In *Thurston*, the Supreme Court concluded that TWA's discrimination was not willful because it adopted its retirement plan only after meeting with its lawyers and union officials to determine the legality of the plan. Because TWA officials acted "reasonably and in good faith" in attempting to see whether their plan would violate the ADEA, "no willful violation occurred." Thus, the Supreme Court ruled that there could be no willful violation where an employer consults with a lawyer to determine the legality of its course of action. Here, as in *Thurston*, Defendant contacted competent labor law counsel to advise it with respect to the legality of its day-rate compensation system and relied on the legal advice it received.

Similarly, in *Nelson, et al. v. Waste Management of Alameda County, Inc.*, 2000 W.L. 868523 (N.D. Cal. 2000) the Court stated: "Defendant presents evidence that its method of payment of wages was in accord with the advice of counsel, and points out that Plaintiffs presented no evidence that any violation of the FLSA was knowing, reckless, or otherwise willful. . . . This Court agrees that there is no evidence of willful violation of the law . . ." at * 4.

In *Huss v. City of Huntington Beach*, 317 F. Supp. 2d 1151 (C.D. Cal. 2000) the Court stated:

> Whether or not a violation of the Fair Labor Standards Act was willful is a question of fact properly submitted to a jury. *See Brinkman v. Dept. of Corrections*, 21 F.3d at 370, 373 (10th Cir. 1994). However, where an employer has relied on substantial legal authority or upon the advice of counsel, a finding of willfulness may be precluded as a matter of law. *See Service Employees Intl. Union Local 102 v. County of San Diego*, 60 F.3d 1346, 1355-56 (9th Cir. 1994); *see also Baker v. Delta Airlines*, 6 F.3d 632, 645 (9th Cir. 1993).

EMPLOY\488443.1

Here, Defendant sought the advice of competent legal counsel to determine the legality of its day rate pay practice. Defendant received advice that its day rate method of compensation, was in fact lawful. Even though the advice proved to be erroneous, Defendant "sought to ascertain the law so as to comply with it." *Lane v. M.S. Pub, Inc.*, 435 F. Supp. 917, 920 (D. Neb. 1977) *citing Hodgson v. Barge, Waggoner  & Summer*, 377 F. Supp. 842, 845 (M. D. Tenn. 1972), *aff'd*, 477 F.2d 598 (6th Cir. 1973).

Defendant's seeking advice from a competent labor law attorney as to the legality of his compensation of its employees and its adherence to that advice precludes any possible finding that the action of Defendant were "willful." Thus the appropriate limitations period for the instant action is the two year period April 5, 2007 to April 4, 2009.

     2.    <u>Liquidated damages are not appropriate.</u>

Section 260 of the Portal-to-Portal Act, 29 U.S.C. §260, provides that liquidated damages are not appropriate where an employer is able to demonstrate that its actions were in good faith and that it had reasonable grounds for believing its conduct was not a violation of the Act. Here, Defendant sought legal advice to insure that its method of paying its employees was in conformity with the FLSA and it relied on that advice in fashioning its pay policy. Thus, liquidated damages are not appropriate.

In *Huggins v. United States America*, 2005 W.L. 6112625 (Fed. Cl. 2005), the Court set forth a test for determining the propriety of an award of liquidated damages. The Court stated:

> The inquiry the Court must make under 29 U.S.C. § 260 involves a two-part analysis that focuses on both subjective and objective standards. To determine whether agency officials [Defendant] acted in "good faith" – a seemingly amorphous concept – the Court must engage in a subjective evaluation of whether the officials had "an honest intention to ascertain what the Fair Labor Standards Act requires and to act in accordance with it." *Beebe v. United States*, 640 F.2d

14

1283, 1295 (Ct. Cl. 1981); *Angelo* [v. United States] 57 Fed. Cl. [100] at 105 [2003]. By contrast, to determine if they "had reasonable grounds for believing that [the] act or omission is not a violation of the [FLSA]". The Court must make an objective inquiry *Beebe*, 640 F.2d at 1295. To claim the § 260 exception, the defendant/employer must satisfy both prongs of the analysis because they are conjunctive. 29 U.S.C. § 260 ("[i]f the employer shows . . . such action was in good faith *and* that he had reasonable grounds . . .) (emphasis added). *Id.* at * 19.

In order to avoid an award of liquidated damages, an employer must show both that it

acted in good faith and that it had reasonable grounds for believing its conduct was in conformity

with the FLSA.

On several occasions, the Tenth Circuit has indicated that reliance on advice of counsel is

sufficient to avoid the imposition of liquidated damages. In *Doty v. Elias*, 733 F.2d 730, 736

(10th Cir. 1984) the Court stated:

> An employer's ignorance of the requirements of the Act does not constitute reasonable grounds for believing that his actions complied with the Act. *Marshall v. Brunner,* 688 F.2d at 753; *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d at 464. Elis admitted that he never sought an opinion of an attorney or the relevant government agency regarding the legality of his method of compensating his employees. Elias testified that he periodically received government literature regarding the wage and hour laws but did not read it."

Similarly, in *Pabst v. Oklahoma Gas & Electric Co.*, 228 F.3d 1128, 1137-38 (10th Cir.

2000) the Court reviewed the District Court's denial of liquidated damages. In upholding the

denial of liquidated damages, the Court stated:

> Perhaps we might reach a different conclusion as fact-finders of the first instance, but we find it difficult to call the district court's conclusion an abuse of discretion. Admittedly, the record here is devoid of the sort of evidence – reliance on attorneys or other experts of personnel matters – that courts have found particularly persuasive in holding FLSA violations reasonable. *See*, e.g., *Cross*, 938 F.2d at 917-18 (holding it "was objectively reasonable to rely on the decisions of the state's personnel experts").

15

Other circuit courts of appeal have similarly held that adherence to the advice of counsel

is sufficient to avoid the imposition of liquidated damages.  The Fourth Circuit in *Roy, et al. v.*

*County of Lexington*, South Carolina, 141 F.3d 533, 458 (4th Cir. 1998) upheld the district court's

denial of liquidated damages stating:

> Here, the district court was satisfied as to the County's good faith and
> reasonableness, and the record supports this conclusion.  First, the district court
> found, and EMS does not dispute, that the County's conduct was not willful for
> the purposes of the statute of limitations issue. *See Roy*, 928 F. Supp. at 1422; *see*
> *also supra* n.4.  We credit this finding as evidence of the County's good faith.
> *See Mayhew*, 125 F.3d at 221 n.4.  Second, the County produced evidence that it
> relied consistently on the advice of Gignilliat, it's labor counsel, which indicates
> the County's good faith, even though the advice ultimately proved incorrect. *See*
> *Lee v. Cohoma County*, 937 F.2d 220, 227 (5th Cir. 1991).

Likewise, the Sixth Circuit in *Featsent et al. the City of Youngstown*, 70 F.3d 900 (6th Cir.

1995) the Court stated:

> During negotiations the City was represented by an attorney.  Presumably, the
> duty of the attorney was not only to represent the City's interests, but also to
> ascertain and follow the dictates of the law, including the FLSA.  There is no
> evidence that at any time the City's attorney advised the City that the
> Agreement's method of calculating overtime compensation violated the FLSA.
> From its attorney's silence, the City was entitled to the reasonable belief that the
> Agreement did not violate the law, including the FLSA. *See Hill v. JC Penney*
> *Co., Inc.*, 688 F.2d 370, 375 (5th Cir. 1982) (finding the defendant's reliance on
> the advice of counsel insulated it from an award of liquidated damages under the
> FLSA); *Van Dyke v. Bluefield Gas Co.*, 210 F.2d 620, 622 (4th Cir. 1954) (finding
> no abuse of discretion where the district court did not award liquidated damages
> on the basis that the employer relied on its attorney's advice that the employee
> was not covered by the FLSA), *cert. denied* 347 U.S. 1014, 74 S. Ct. 870, 98 L.
> Ed. 1137 (1954); *Foremost Dairies v. Ivey*, 204 F.2d 186, 190 (5th Cir. 1953)
> (finding no abuse of discretion where the district court denied a claim for
> liquidated damages on the basis that during negotiations both the employer's and
> the union's lawyer concluded that the FLSA had no application).  At 906-07.

16

In *Lee v. Coahoma County, Mississippi*, 937 F.2d 220 (5th Cir. 1991), the court affirmed the ruling of the district court that failed to award liquidated damages because the County sought the advice of counsel in structuring a compensation plan that complied with the FLSA.  In *O'Brien v. Town of Agawam*, 482 F. Supp. 2d 115 (D. Mass. 2007) the court stated with respect to liquidated damages:

> Case law construing 29 U.S.C. § 260 strongly suggests that liquidated damages must be awarded unless the employer can show that it solicited an opinion from the Department of Labor regarding the employment practice at issue, *see McLaughlin v. Hogar San Jose, Inc.*, 865 F.2d 12, 14 (1st Cir. 1989), or "rel[ied] on the advice of informed counsel," *S. New Eng. Telecomms. Corp.*, 121 F.3d at 72; *see also Kelley v. Loomis Fargo & Co.*, 183 F.3d 257, 270 (3rd Cir. 1999) ("[R]easonable good faith is not shown when an employer does not inquire about the law's requirements.")  at 120.

In *Rogers v. Savings First Mortgage LLC*, 362 F. Supp. 2d 624 (D. Maryland 2005), the court stated:

> If actually supported, a defense based on advice of counsel might be sufficient to avoid liability for liquidated damages. *See Van Dyke v. Bluefield Gas Co.*, 210 F.2d 620, 621 (4th Cir. 1954) (finding that within district court's discretion to deny liquidated damages where an attorney advised employer that plaintiff was not employee covered under FLSA) *cert. denied*, 347 U.S. 1014, 74 S. Ct. 870, 98 L. Ed. 1137 (1954).

*See also Horan v. King County, Washington, Division of Emergency Medical Services*, 740 F. Supp. 1471 (W.D. Wash. 1990).  (The fact that an employer acts on advice of counsel may provide one reason to deny liquidated damages. *See Dalheim*, 712 F. Supp. at 540 (and cases therein.)) at 542.

Virtually every court that had occasion to rule on the availability of liquidated damages where the Defendant employer sought, obtained and followed legal advice has ruled that liquidated damages are unavailable.  This is true even where the legal advice was erroneous.

17

CONCLUSION

There is no dispute as to the fact that Defendant sought, received and adhered to advice received from a competent labor law lawyer. Unfortunately, for the Defendant, the advice was not correct. However, that does not affect the analysis as to the appropriate limitations period and the availability of liquidated damages. Here, based on the undisputed facts, the appropriate limitations period is two years as the actions of the Defendant were not willful. No liquidated damages should be awarded as Defendant acted in good faith as demonstrated by its seeking legal advice and had reasonable grounds for believing that the date rate was proper based on the legal advice it received.

WHEREFORE, Defendant request the Court to enter an Order granting Defendant' Motion for Partial Summary Judgment ruling the applicable period of limitations is two years and further ruling that liquidated damages are unavailable.


Dated this 3rd day of June, 2009.


                                        s/ W.V. Bernie Siebert
                                        W.V. Bernie Siebert
                                        SHERMAN & HOWARD L.L.C.
                                        633 Seventeenth Street, Suite 3000
                                        Denver, CO 80202
                                        (303) 299-8222
                                        (303) 298-0940 (fax)
                                        bsiebert@sah.com

                                        Sharon M. Rose
                                        LAVERY & ROSE, P.C.
                                        P.O. Box 890
                                        Evanston, WY 82930
                                        (307) 444-4200

18

(307) 444-0559 (fax)
srose@evanstonlaw.com

*Attorneys for Defendant*

EMPLOY\488443.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of June, 2009 a true and correct copy of the foregoing **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** was served electronically via ECF to the following:

Jason M. Tangeman – jtangeman@wyolegal.com
ANTHONY, NICHOLAS & TANGEMAN, LLC
170 North Fifth Street
P.O. Box 928
Laramie, WY  82072


Alan S. Kaufman – ask@flsa.com
CHAMBERLAIN, KAUFMAN & JONES
35 Fuller Road
Albany, NY  12205


s/ Sharon Brookshire

20