Jason M. Tangeman
NICHOLAS, & TANGEMAN, LLC
170 North Fifth Street
P.O. Box 928
Laramie, Wyoming 82072
307-742-7140 (phone); 307-742-7354 (fax)
Jtangeman@wyolegal.com

Alan S. Kaufman
CHAMBERLAIN, KAUFMAN & JONES
35 Fuller Road
Albany, NY 12205
518-435-9427 (phone); 518-435-9102
ask@flsa.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| PAUL A. MUMBY, ERIC HOLTZCLAW, ) <br> WILLIAM G. JOHNSON,  JOHN PAZEJ, Jr., ) <br> RITTA PEAVLER, JAMES G. RAUCH, ) <br> JEROME G. RAUCH, DAVID REDDIN, and ) <br> others similarly situated, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> PURE ENERGY SERVICES (USA), INC., ) <br> ) <br> **Defendant.** ) | **CIVIL ACTION NO.** <br> **09-CV-0077-D** <br> <br> **PLAINTIFFS' BRIEF IN** <br> **OPPOSITION TO MOTION** <br> **OF DEFENDANT FOR** <br> **PARTIAL SUMMARY** <br> **JUDGMENT** |

### Preliminary Statement

Plaintiffs seek unpaid overtime, liquidated damages, attorney's fees and costs under the

Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA").  Plaintiffs are identically situated to

plaintiffs in  Condos v. Pure Energy Services, 07-127J (D. Wyo).

### Facts[1]

---

[1]The following exhibits are submitted with plaintiffs' brief:  A - Bohan transcript excerpts,
B  - Ciprick transcript excerpts, C - Debonis transcript excerpts, D - Hurcomb transcript excerpts,
E  -  Rucker transcript excerpts, F - Plaintiffs' Declarations, G - Excerpt from Pure Energy
website, H - Condos Pure Energy Privilege Log, I - Plaintiffs' appeal of denial of motion to

Defendant began operation in 2004 as the U.S. subsidiary of a Canadian Corporation which has operations and headquarters in Alberta, Canada.   Debonis 5[2], Kaufman Dec. par. 14.

Except where noted, the facts in this paragraph are supported by the finding of facts in Condos, Defendant's Exh. A, and by plaintiffs' declarations: Plaintiffs were oil field workers. Except when assigned to work in the shop and paid by the hour, plaintiffs worked 12-hour shifts, seven days a week in the oil fields and were paid by a "day rate."   Plaintiffs often worked field hours beyond their 12-hour shifts and were also required to attend mandatory meetings before or after shifts.   Ciprick 35, 75-77.  Some plaintiffs were required to drive vehicles to and from the field sites before and after the 12-hour shifts transporting crew, tools, parts and the vehicle itself, all of which were used at the work site during the work day.   Bohan 10-11, Ciprick 22-26, 73. The "day rate" was paid regardless of how many hours were worked in a day – 12 hours, more than 12, or fewer than 12 hours.  Defendant did not keep track of how many hours plaintiffs worked each day or each workweek and did not pay overtime for every hour worked over 40 hours in a workweek.   Defendant simply paid the day rate and an hourly rate for every hour in the shop. Defendant presented employees with written employment terms stating that employees were paid a day rate for each day ticketed to a client for work in the fields. Some plaintiffs' terms stated that the day rate was calculated using 8 hours of the regular time and 4 hours of overtime and some did not.

Although Alberta appears to have overtime laws that require employers to pay overtime to oil field service employees, including travel time, Kaufman Dec. pars. 16-17, Exhibit J, and

---

compel in Condos,  J - Material re: Alberta overtime law, K - Excerpt from Pure Energy 2009 First Quarter Report, L - Pre-1/06 Time and Attendance records,  M - Post-1/06 Time and Attendance records, N - Kaufman Declaration

[2]References are to transcript page numbers.

defendant had corporate counsel in Canada, Debonis 6, prior to commencement of operations in the United States, defendant took no steps to ascertain the requirements of the FLSA with respect to payment of its U. S. employees.  Bohan 5.

After commencement of operations in the United States, defendant recognized the need to be in compliance with laws regarding compensating employees in the United States,  Debonis 24-25, yet defendant took no steps to ascertain the law with respect to U.S. overtime law until well after operations began.  The first contact with lawyers appears to have been made in late December, 2005, 15 months after defendant commenced operations.

The facts with respect to defendant's contacts with lawyers regarding its compensation of its workers are somewhat unclear.  Defendant's 30(b)(6) witness testified that no effort was made to ascertain the provisions of the FLSA until Cindy Rucker contacted Paul Hurcomb in January, 2006.  Bohan 5-6.  Debonis was hired as president in June, 2005.  Debonis 7.  Prior to Rucker's employment in December 2005, there was no person employed by defendant responsible for defendant's FLSA compliance.  Bohan 6-7.   Payroll was run out of Canada.  Debonis 7, 10.  Rucker was hired  to transition payroll from Canada and run payroll in the United States for defendant.  Debonis 19-20, Rucker 17.  Rucker was aware of the FLSA as a result of prior experience in payroll and studying for her Professional in Human Resources certificate.  Rucker 12-13.  Rucker understood that field employees were entitled to overtime.  Rucker 42.  Rucker generally thought that the overtime threshold was 40 hours in a workweek.  Rucker 43.

Sharon Rose is a lawyer in Evanston who advised Pure Energy.  Rucker 29-33.  Rucker spoke with Rose more than once, in person and on the telephone.  Id.  On December 29, 2005, Rucker sent emails to Debonis and others regarding communication she had with Rose regarding defendant's "offer letters."  In Condos, defendant disclosed the communication but claimed

attorney client privilege and objected to the disclosure of the substance of what Rose told Rucker. Rucker 29-33, Kaufman Dec. par. 6.  Probably in January 2006, Rucker was told by Robin Freeman, who did payroll in Wyoming, that the day rate had been reviewed by an attorney in Wyoming, whose name Rucker was not given and never found out.  Rucker 24.  She did not know if it was Rose.  Rucker 51-52.

In late December 2005 or early January 2006, Rucker had a discussion with Debonis about whether the day rate was the correct way to pay employees.  At Debonis' instruction Rucker spoke with Paul Hurcomb,  a lawyer in Colorado Springs.  Debonis 21, Rucker 23.

Rucker spoke with Hurcomb for the first time on January 4, 2006.  Rucker 34-36.  Rucker and Hurcomb had several conversations in January 2006 in which they discussed the payment of field employees and defendant's offer letter.  Rucker 34.  Rucker told Hurcomb that defendant's employees were paid a day rate with overtime factored into the day rate and that employees worked 12-hour shifts, seven days a week.  Hurcomb 10, 18.  Hurcomb had had some basic exposure to the FLSA but had never heard of a day rate and did not know what it meant. Hurcomb 10, 12, 44.  Rucker sent Hurcomb some job descriptions and sample offer letters and asked whether defendant "was paying non-exempt employees correctly with the day rate" and whether the offer letters needed to "contain a breakdown of the regular rate vs. the overtime rate." Rucker 36, Defendant's Exhibit G.

Notwithstanding that he had never heard of a day rate, Hurcomb did no legal research with respect to overtime calculation for employees paid by day rate, and he did not know in January 2006 that Department of Labor regulations covered such calculation, 29 C.F.R. §§778.109 and 778.112.  Hurcomb 14-15.  Nevertheless, Hurcomb told Rucker that if the day rate "had factored in overtime, that it would be in compliance" with the FLSA.  Hurcomb 14-16.

4

Hurcomb had no legal authority to support this conclusion. Hurcomb 17.

Hurcomb did not discuss with Rucker whether an employee working seven 12-hour shifts and paid only a day rate was in compliance with the FLSA and Hurcomb did not discuss calculation of overtime in that situation.  Hurcomb 18, 45-47, Rucker 48, 52.  However, Hurcomb and Rucker discussed  that "any hours over 40 had to be paid at the overtime rate" and that, notwithstanding that field employees were paid a day rate, they still had to be paid overtime for all hours over 40.  Hurcomb 11, 16, 27.  Hurcomb thought that Rucker was familiar with the concept of overtime being required for hours worked over 40 in a workweek.  Hurcomb 11. Rucker did not tell Hurcomb that sometimes employees worked in the shop and were paid by the hour and Hurcomb did not ask and they did not discuss how to calculate overtime for an employee who worked both in the field and the shop in the same workweek.  Rucker 47, 71, Hurcomb 19.  Rucker did not ask Hurcomb any questions related to compensation for time spent by field employees driving vehicles to and from work sites.  Hurcomb 51.

Hurcomb did not advise Rucker  that the FLSA required the employer to keep accurate records of hours worked.  Hurcomb 20.  Hurcomb advised Rucker that offer letters to employees compensated by a day rate should explain how the day rate was calculated.  This was to avoid pay rate disputes, not because the law required it when paying day rates.  Hurcomb 32-34.  The offer letters Hurcomb was asked to review by Rucker made no mention of a weekly overtime standard or compensation of overtime on a weekly basis, and Hurcomb saw no need to include in the offer letters language about a weekly overtime standard.  Hurcomb 46.

After their conversations about the day rate, on January 9, 2006, Rucker sent an email to Tyler Bittner, Brooke McElley, Debonis and Freemen that stated:

> I have confirmed with an employment law attorney that we are paying our
> non-exempt (field) employees correctly using the day rate as long as we

> document that the day includes a regular rate for 8 hours and an overtime
> rate for the additional time (and as long as we don't exceed 12-hour shifts).
> I will make sure that all offer letters going forward have language that
> makes this clear. . . .

Defendant's Exh. H, Rucker 45-46.  Bittner was operations manager in Colorado, Rucker 40-41,

McElley was marketing manager and recruiter, Rucker 19, and Freeman did payroll in Wyoming.

Rucker 18.

Rucker did not ask Hurcomb for an opinion letter or written advice with respect to the

adequacy of a day rate under the Fair Labor Standards Act.  Hurcomb 28.

After the communication with Hurcomb, aside from Rucker's email, defendant did not

send any communications to the field or field supervisors stating that employees should not do

any work beyond their 12-hour shifts and the offer letters made no mention of overtime for hours

worked over 40 or for work that exceeds 12-hour shifts.  Rucker 49-50.  Plaintiffs regularly

worked extra hours in the field after January 2006, and defendant was aware of it.  Plaintiffs'

Declarations, Ciprick 34-35, 49-50, 68, 95.

In January 2006, Debonis was told by either Rucker or Hurcomb that the method Pure

Energy was using "had to be rectified to reflect hours, not days."  Debonis 38.  Debonis recalls

having a discussion with Rucker after she spoke with Hurcomb about "changing the offer letters

and changing the way we would pay our employees."  Debonis 26.  Notwithstanding this

testimony, and notwithstanding Rucker's acknowledgment that, even according to Hurcomb, the

day rate did not cover any extra hours worked beyond the 12-hour shift, after the Hurcomb

consultation defendant made no change in its time sheets and did not require employees to keep

track of all hours worked, including extra hours in the field, at meetings or driving vehicles.

Defendant simply continued its previous practice, implemented from the start of operations in

October, 2004, of having employees indicate shifts worked in the field and hours worked in the

shop.  Rucker 54.  Employees were not required to record the actual number of hours they worked in the field on their time sheets because they were paid the same regardless of the number of hours they worked.  Rucker 54   This practice continued until September or October 2007, after the filing of <u>Condos</u> in June, 2007.   Bohan 9

Before defendant started requiring employees to record the actual number of hours worked each day and each week, defendant has no records of the actual number of hours worked by plaintiffs in the field in a day or in a week.  Bohan 9-10.  Even after defendant started requiring employees to record actual hours worked, employees were not required to record, and were not compensated for, hours spent driving vehicles.   Bohan 11, Plaintiffs' Declarations.

Before defendant started requiring employees to record the actual number of hours worked each day and each week, if an employee worked only in the field during the period of time covered by a time sheet so that he was paid a day rate only, defendant did not analyze those time sheets on a workweek basis because, according to Rucker, the day rate "incorporated regular and overtime."  Rucker 63.

Before the consultation with Hurcomb,  in workweeks in which all shifts were worked in the field and compensated by day rate, defendant did not pay overtime for all hours worked over 40 in a workweek, even though crediting the four hours of overtime allegedly built into some of the employees' day rate did not cover all over time hours.   In a seven day work week, assuming no additional work beyond the 12-hour shifts, 14 hours was overtime that was not possibly covered by built in overtime.   After the consultation with Hurcomb there was no change in defendant's practice until September or October, 2007.   Plaintiffs' Declarations.

Before the consultation with Hurcomb, in workweeks in which employees worked over 40 hours in the shop, defendant did not pay overtime for all hours worked over 40. Kaufman Dec.

par. 10 , Exhibit L .  After the consultation, sometimes defendant paid employees overtime for all hours over 40 in a workweek and sometimes defendant paid overtime only for hours worked over eight in a day.   Kaufman Dec. par. 11 , Exhibit M .

Before the consultation with Hurcomb, if employees worked both hours in the fields compensated by day rate and hours in the shop compensated by hourly pay, defendant did not combine the hours worked in the field with hours worked in the shop for the purpose of calculating overtime, even though any overtime allegedly built into the day rate could not have covered all overtime hours in the shop.  After the consultation with Hurcomb, defendant made no change in this practice until defendant stopped compensating by the day rate in September or October 2007.   Kaufman Dec. pars 10 and 11, Exhibits L, M, Plaintiffs' Declarations.

Rucker admitted at her deposition, that in numerous specific instances relating to the plaintiffs in Condos, defendant had not calculated and paid overtime consistent with her understanding of the FLSA.  Rucker 60-89.

Condos was filed and served on June 12, 2007.  Defendant did not change its record keeping to require employees to record actual time in the field until approximately September, October, 2007.  Bohan 9.  Defendant has never required employees driving company vehicles to and from work sites to record actual hours worked.  Bohan 10-11.

Defendant moved for partial summary judgment in Condos in September, 2007.  Kaufman Dec. par. 20.  As reflected in Judge Johnson's decision, in its motion, defendant conceded that it did not pay its employees all overtime required by the FLSA and that any overtime allegedly built into the day rate of some employees did not cover all the overtime hours worked by field employees.  Defendant's Exhibit A, p. 2.  Notwithstanding this admission, defendant did not pay any back wages to its employees at that time, including plaintiffs in this case.  On February 8,

2008, Judge Johnson ruled that the calculation of overtime to day rate employees was governed

by 29 C.F.R. §§778.109 and 778.112.  Id.  Notwithstanding this ruling, defendant did not pay any

of plaintiffs in this case unpaid overtime owed as result of the decision.   Plaintiffs' Declarations.

Subsequent to the settlement of Condos, in a malpractice claim against Hurcomb, defendant

recovered $700,000.   Kaufman Dec. par. 21.

### Response to Defendant's statement of Undisputed Facts.

1.  Not disputed.

2.  Not disputed.

3.  Not disputed.

4.  Disputed.  Defendant paid employees a day rate for work in the field and hourly for

work in the shop.  Plaintiffs' Declarations.  Day rates are lawful in the United States but

employees paid a day rate are still entitled to overtime.  Defendant cites no authority for the

assertion that day rates are "lawful" in Canada.  The law in Alberta, where defendant had

operations and headquarters, appears to  require overtime to oilfield service workers and contains

no exemption for day rate employees.  Kaufman Dec. pars. 16-17.

5.  Not disputed.

6.  Not disputed.

7.  First sentence, not disputed.  Second sentence disputed.  Employees were given offer

letters and employment terms from the outset of defendant's operations and not starting in

December, 2005.   Bohan 12, Defendant's Exhibit D.

8.  Incomprehensible.  Unable to respond.

9.  Ambiguous assertion. It appears that the asserted time frame is when Rucker herself

first raised the issue, but it is not clear whether the issue had been addressed with an unknown

Wyoming lawyer prior to that time.  Rucker 24.  Also it is not known what was discussed with Sharon Rose at the end of December, 2005.  Rucker 29-33.

10.  Not disputed.

11.  Not disputed.

12.  Disputed.  Rucker said that she wanted to "resolve . . . whether we are paying the non-exempt employees correctly with the day rate (I want to make sure if we ever get audited that we can prove that we've paid correctly.)"  No mention was made of the Department of Labor. Defendant's Exhibit  G.

13.  Not disputed.

14.  Not disputed.

15. and 16.  Disputed.  Defendant had included such language in its offer letters before it consulted Hurcomb.  Defendant's Exhibit D.  Hurcomb suggested that the offer letters include language about the calculation of the day rate to avoid disputes, not because he believed it was required by the FLSA or to make the day rate legal.  Hurcomb 32-34.

17.  Not disputed.

18.  Not disputed.

19.  Not disputed.

20.  Not disputed.

21.  Disputed. Hurcomb made clear to Rucker that overtime was owed for all hours worked over 40.  Hurcomb 11, 16, 27.  Even counting the overtime built into the day rate, defendant did not pay overtime for 14 hours a week of a seven day schedule, for extra hours spent in the field over the 12-hour shift, for meetings held before or after the shift, and for time spent driving vehicles to and from field sites.  Nor did defendant keep track of actual hours worked.

See Facts above.

22.  Disputed.  It is not known what advice defendant received from Sharon Rose prior to its consultation with Hurcomb.  Rucker 29-33.

23.  Disputed.  Rucker advised that the lawyer stated that employees were paid correctly using the day rate as long as it was documented that the day rate included a regular rate for 8 hours and "an overtime rate for the additional time (and as long we don't exceed 12-hour shifts.)" Defendant's Exhibit  H.

24.  Disputed.  What defendant "believed" is a question fact based on all the evidence.  A finder of fact based on all the evidence could conclude that defendant knew it was not paying its employees correctly even after Rucker's conversation with Hurcomb.   See Argument below.

## POINT I

### SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO DEFENDANT'S WILLLFULNESS.

Whether defendant acted willfully must be based on all the facts and circumstances concerning defendant's conduct. Uffelman v. Lone Star Steel Co., 863 F.2d 404, 410 n.5 (5th Cir. 1989), cert denied, 490 U.S. 1098 (1989).  Summary judgment may be granted only if, viewing the evidence and inferences in the light most favorable to plaintiffs, there are no facts that would support a finding for plaintiffs.  See Wolf v. Prudential Insurance Co., 50 F.3d 793, 796 (10th Cir. 1995).  Defendant has not met this standard.  The sole argument offered by defendant is that it consulted a lawyer in January, 2006, who, without a basis in the law, advised it that overtime included in the day rate was in compliance with the FLSA.   This evidence is insufficient to support summary judgment for defendant, but does support judgment for plaintiffs.

**A.  The facts and inferences viewed in plaintiffs' favor support a finding of willfulness**.

The following facts and inferences support a finding of willfulness here:

-- Defendant had corporate counsel in Canada.  Alberta, where defendant had operations and corporate headquarters, appears to require payment of overtime to oil service workers after 12 hours in a day and 191 hours in a month.  Alberta law also required payment for travel time to and from the base to the work site.  Yet, defendant commenced U.S. operations  without researching U.S. law or consulting a lawyer with respect to payment of wages.  Even if payment by day rate exempted employees from overtime in Canada, it as grossly reckless not to even research U.S. law.

 – Defendant operated for approximately 15 months before seeking information regarding compliance with U.S. wage and hour laws.  Testimony regarding lawyers consulted is unclear.

 – Prior to consultation with the lawyer, defendant did not pay overtime for all hours worked over 40 in a workweek even when its employees only worked in the shop and were paid hourly.  Day rates could not be relied on as excuse for this failure.

 – Prior to consultation with the lawyer, defendant did not keep track of actual hours worked by its employees or pay overtime for all hours worked over 40 in a workweek when its employees worked in the shop and in the field in the same workweek.  Overtime included in the day rate could not have compensated for all overtime hours in the workweek in this situation.

 – Prior to consultation with the lawyer, defendant did not keep records of actual hours worked by its employees, or pay overtime, even though defendant required employees to work extra hours in the field beyond the 12 hour shifts and to attend mandatory meetings before and after shifts and required employees to drive vehicles before and after shift transporting crew, tools and parts.  Four hours of overtime allegedly  included in the day rate could not have compensated for these overtime hours.

 – Prior to consultation with the lawyer, for some of its employees, defendant used an

employment agreement that stated that the day rate was "calculated" using 8 hours of straight time and 4 hours of overtime.  This showed some awareness of an overtime obligation.  However, even if the law had allowed overtime to be included in the day rate, which it did not, payment by a day rate "calculated" according to defendant still meant that 14 hours a week were overtime hours not compensated at time and one-half.  Defendant did not pay overtime for these hours, or any hours, even though it was clear by reason of simple arithmatic that these hours were not covered by any overtime "included in" the day rate.

– Defendant consulted a lawyer who had limited experience with the Fair Labor Standards Act.  He had never heard of a day rate and did not know what it was.

– Defendant asked the lawyer whether the day rate was in compliance with the FLSA, but defendant did not inform the lawyer that its employees worked extra hours beyond twelve hours, including mandatory meetings and extra hours in the field.  Defendant also did not inform the lawyer or inquire about many hours beyond the 12-hour shifts spent driving by supervisors who were required to drive vehicles transporting crew, equipment and supplies to and from the field. (Well established Tenth Circuit precedent holds such driving time is compensable work).  DA & S Oil Well Servicing, Inc. v. Mitchell, 262 F.2d 552 (10th Cir. 1958); Crenshaw v. Quarles Drilling Corp., 798 F.2d 1345 (10th Cir. 1986)).

– Defendant also did not inquire about how to compensate employees who work some hours in the shop and some in the field in the same workweek.

– Notwithstanding his lack of experience and lack of knowledge of day rates, the lawyer did no research regarding the legality of day rates.

– Not only did defendant not inform the lawyer and inquire about all its practices, but defendant did not ask the lawyer for a written opinion, notwithstanding defendant's alleged

concern about an "audit."  This is not the conduct of an employer concerned about an "audit."

The only documents that exist are Rucker emails that can be read as "self-serving."

  -- After the consultation with the lawyer, notwithstanding the baseless advice provided,  it

was clear that defendant was aware of its obligation to pay overtime under the FLSA for all hours

worked over 40 hours.  It was also just simple math that, even if 4 hours of overtime were

permissibly included in the day rate, 14 hours a week of overtime in an 84 hour a week schedule

would not be covered by any "built in" overtime.  In addition, Rucker's email itself stated that the

lawyer advised that the overtime included in the day rate did not cover any hours worked over 12

hours in a day.  Notwithstanding these facts, even after the lawyer consultation, defendant: a)

failed  to keep accurate records of the actual hours worked by its field employees in each

workweek; b) failed to send directions to its supervisors to prevent its employees from working

over 12 hours in a shift, or to compensate employees for that time, although it was aware that they

were working such hours; c) failed to inform its employees that overtime was due for all hours

worked over 40 in a workweek; d) failed to pay overtime for the 14 hours a week of overtime that

would not be covered by any overtime allegedly included in the day rate even if that were the

law; e) failed to pay overtime for all overtime hours when its employees worked over 40 hours in

a week in the shop, for which employees were paid by the hour and not by day rate; f) failed to

pay overtime for all hours worked over 40 in workweeks when its employees worked some hours

in the shop and some hours in the field.

  – In January 2006, defendant's president was told by either Rucker or Hurcomb that

defendant's record keeping "had to be rectified to reflect hours, not days" and he had a discussion

with Rucker about "changing the way we would pay our employees."   Yet, after January 2006,

no change was made in time sheets to record actual hours worked, not days, nor was any change

made in how defendant paid its employees.  This is explicit evidence of willfulness.

–After it was sued in June 2007, defendant did not change its practices of not keeping track of overtime hours worked, and not paying for all overtime worked in the field until approximately September or October, 2007.

– Although it admitted in its motion for partial summary judgment in Condos that it had not paid overtime as required by the FLSA, and the Court ruled on that motion that including overtime in a day rate was not legal, defendant did not pay back wages to all its employees, but only those who had become plaintiffs in Condos.

Based on these facts and inferences a finder of fact could conclude that, notwithstanding consulting with a lawyer 15 months after starting operations, defendant acted willfully in failing to follow the requirements of the FLSA.  Starting from the very beginning of its operations and continuing well after it consulted a lawyer, defendant ignored its obligation to be in compliance with the law.  The lawyer consultation did not make the slightest dent in defendant's non-compliance, even with respect to those matters not addressed by the lawyer's advice and even with respect to those matters with respect to which defendant was not in compliance based on the lawyer's advice.   After that consultation there is no doubt of defendant's knowledge of the FLSA, yet defendant simply ignored its requirements.  This record supports a finding of willfulness.  Karr v. City of Beaumont, 950 F.Supp. 1317, 1325 (ED Tex. 1997) (Employer "showed reckless disregard for whether their conduct was prohibited by the FLSA by having knowledge that they were bound by the FLSA and failing to abide by its overtime provisions."); Martin v Selker Bros., 949 F.2d 1286, 1296 (3d Cir. 1991), cert. denied, 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992).   Dole v. Elliot Travel & Tours, Inc., 942 F.2d 962, 967 (6th Cir. 1991) (undisputed evidence that defendant had "actual knowledge of the requirements of the

FLSA" prior to the violation is sufficient for summary judgment on willfulness.)

**B.  Consulting a lawyer is not an ipso facto defense to a claim of willful conduct, especially when the lawyer's advice is not based on a credible legal argument.**

Defendant fails to confront any of this evidence of its willful conduct.  Instead, defendant relies solely on the consultation with an incompetent lawyer.  However, the mere fact that defendant consulted a lawyer does not preclude a finding of willfulness.

**1.  Defendant is responsible for its lawyer's actions; failing to research the law is willful.**

Defendant is responsible for its lawyer's actions.  The relationship of attorney and client is one of principal and agent.  Commissioner of Internal Revenue v. Banks, 543 U.S. 426, 436 (2005); Weigel v. Hardesty, 37 Colo. App. 541, 549 P.2d 1335 (Ct. App. 1976); Siener v. Zeff, 194 P.3d 467, 471, (Ct. App. 2008).   "Corporations can speak and act only through their agents." Goldberg v. Kickapoo Prairie Broadcasting, 288 F.2d 778, 781 (8th Cir. 1961).  Defendant could not disclaim responsibility for the actions of its lawyer any more than for the actions of its employees.  See id.: "'The mandate of the statute is directed to the employer and "he may not escape it by delegating it to others" . . . . "He must then stand or fall with those whom he selects to act for him."'").  Defendant is responsible for its lawyer's failure to research the law and cannot create a defense to a claim of willfulness by blaming its lawyer.   An employer who knows of the risk of liability under the FLSA but fails to investigate the law or facts acts willfully.  See Herman v. RSR Security Services, 172 F.3d 132, 141-142 (2d Cir. 1999).  Here, it is undisputed that defendant failed to research the law.  Because this is willful conduct as a matter of law, the Court may enter summary judgment for plaintiffs.  Faustin v. City and County of Denver, 423 F.3d 1192, 1198-99 (10th Cir. 2005).

**2.  Consultation with lawyer by itself is not good faith; the lawyer's advice must be based on a credible legal argument.**

Consultation with an incompetent lawyer is not a per se defense to willfulness.  Uffelman

v. Lone Star Steel Co., 863 F.2d 404, 409 (5th Cir. 1989), cert denied, 490 U.S. 1098 (1989):

> While we agree that an employer who acts reasonably and in good
> faith in attempting to determine whether its plan will violate the law
> does not act willfully, it does not follow that seeking legal advice
> *ipso facto* establishes the appropriate intent.  In reaching a
> determination on the issue of the employer's good faith, the jury is
> entitled to weigh the credibility of witnesses and to disbelieve self-
> serving testimony.

See also Glenn v. General Motors Corp., 658 F.Supp. 918, 927 n.3 (D. Ala. 1987), affirmed, 841

F.2d 1567 (11th Cir.), cert denied, 488 U.S. 948 (1988); Schultz v. Parke, 413 F.2d 1364 (5th Cir.

1969).

Reliance on an advice of counsel defense is valid only when the advice is based on a

defensible position under the law.  The defense cannot be based on counsel's ignorance.  Glenn v.

General Motors, supra, 658 F.Supp 918, 927 n.3:

> If an employer could escape the "reckless disregard" standard
> solely by obtaining a green light from its lawyers, it would be far
> too easy for a defendant to circumvent the requirements of the Act. .
> . . .  It seems that the better law would require, at a minimum, good
> faith reliance on a colorable legal position.

Here, defendant's lawyer did not know what a day rate was, yet did no research.  This is more

than ignorance, it is malpractice.  See Temple Hoyne Buell Foundation v. Hollard & Hart, 851

P.2d 192 (Ct of App. Col. 1992); Streber v. Hunter, 221 F.3d 701, 725 (5th Cir. 2000).

In Schultz v. Parke, supra, 413 F.2d at 1369, the Court stated:

> Reliance upon the advice of counsel provides the chief support for
> the finding of good faith.  That, of course, is not irrebuttable (or
> open and shut) evidence of good faith. . . .  In the case now before
> us, if counsel for Mr. Parke had really consulted the precedents he
> would have found many cases holding that employees doing this
> type of work were covered by the Act.  One item of evidence
> seriously impeaches the claim of good faith: Mr. Parke knew that
> by virtue of a voluntary contract he was obligated to pay overtime

to the guards at the federal buildings but he had not paid it.

Here, defendant's failure to comply with the basic FLSA overtime requirements even after its lawyer consultation -- when it is clear defendant knew the obligation to pay overtime for hours worked over 40 – similarly seriously impeaches any claim of good faith reliance on the incompetent advice.  In Reynolds v. Hartford Financial Services Group, Inc., 435 F.3d 1081, 1099 (9th Cir. 2006), reversed on other grounds, Safeco Insurance of America v. Burr, 551 U.S. 47 (2008), in addressing a statutory "willfulness" claim in another context, the court stated:

> A company will not have acted in reckless disregard of a consumers' rights if it has diligently and in good faith attempted to fulfill its statutory obligations and to determine the correct legal meaning of the statute and has thereby come to a tenable, albeit erroneous, interpretation of the statute.  In contrast, neither a deliberate failure to determine the extent if its obligations nor reliance on creative lawyering that provides indefensible answers will ordinarily be sufficient to avoid a conclusion that a company acted with willful disregard. . . .  Reliance on such implausible interpretations may constitute reckless disregard for the law and therefore amount to a willful violation of the law.
> Where, as here, at least some of the interpretations are implausible, consultation with attorneys may provide evidence of lack of willfulness, but is not dispositive.   See Baker v. Delta Air Lines, Inc. 6 F.3d 632, 645 (9th Cir. 1993); Uffelman v. Lone Star Steel Co., 863 F.2d 404, 409 (5th Cir. 1989) . . . . Whether or not there is willful disregard in a particular case may depend in part on the obviousness or unreasonableness of the erroneous interpretation.

The interpretation relied on by defendant was not merely implausible, it was baseless.  It was not based on a good faith interpretation of the law, it was simply made up. Such baseless advice of counsel is not only not an ipso facto defense, it is tantamount to "deliberate failure to determine the extent of its obligations."  Here, defendant also did not seek advice with respect to all relevant facts with respect to its payment of plaintiffs and failed to pay overtime for hours that were without question overtime hours, even considering the advice defendant received.

The FLSA is construed liberally in favor of employees.  Tony and Susan Alamo Foundation v. Sec. of Labor, 471 U.S. 290, 297 (1985); see also Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 739 (1981).  Nothing in the FLSA or the intent of the FLSA justifies creating a rule of law that allows an employer to disclaim responsibility for the actions of its incompetent lawyer, especially when such actions are being urged to deny plaintiffs the benefits of the overtime due them under the FLSA.  Defendant has a remedy in the form of a malpractice claim against its own lawyer for the lawyer's actions, a remedy defendant has already availed itself of.   If defendant is allowed to avoid a third year of liability based solely on the consultation with an incompetent lawyer, the system is perverted.  Defendant would avoid liability for overtime clearly due its employees under the law and defendant's lawyer would also escape liability for his blatant malpractice.  No interests are served by such a result.

None of the cases cited by defendant stand for the proposition that consultation with an incompetent lawyer establishes an ipso facto defense to third year liability.  None addressed reliance on advice of counsel who did no research and whose "advice" was nothing more than a guess that was contrary to an explicit DOL regulation.  Indeed, one of defendant's cases clearly supports denial of defendant's motion.  In Huss v. City of Huntington Beach, 317 F.Supp.2d 1151, 1161 (C.D. Cal. 2000), the court denied summary judgment because "a reasonable jury could view the defendants' failure [to pay agreed FLSA compensation] retroactively as a willful violation of the FLSA. . . ."  The same conclusion can be reached by a factfinder here.

In sum, defendant failed to research the law and ignored the law and its obligation to be in compliance with the law both before and after consulting a lawyer.  This is willful behavior extending the statute of limitations under §255(a) of the FLSA.  Summary judgment should be entered for plaintiffs.  At a minimum, there is sufficient evidence to create an issue of fact

regarding defendant's willfulness.

**C.  Alternatively, the motion should be denied or continued pursuant to FRCP 56(f) so plaintiffs may obtain discovery.**

Plaintiffs contend that the evidence submitted above is sufficient to defeat defendant's motion for summary judgment on the issue of willfulness.  Alternatively, pursuant to FRCP 56(f), should the Court disagree, the motion should be denied or continued to allow plaintiffs to obtain discovery of defendant's consultation with lawyer Sharon Rose in December, 2005, and of additional time and attendance records.  See Kaufman Declaration.  This evidence is essential to the fair resolution of the question of defendant's willfulness.  If defendant was advised by Rose in any way that suggested defendant's practices were not in compliance with the law, but then chose to consult and follow a lawyer who did no research, it would be powerful evidence of the willfulness of defendant's conduct.  See  Donovan v. Bel-Loc Diner, Inc., 780 F.2d 1113, 1118 (4th Cir. 1985) ("[F]ollowing the most favorable advice, in the face of obvious conflict, does not constitute good faith.").  Also, additional time and attendance records would show the extent of defendant's non-compliance with the FLSA even after the Hurcomb consultation, with respect to matters having nothing to do with the day rate.  It would be unfair at this early stage of this case to dismiss plaintiffs' third year claim without allowing plaintiffs discovery bearing directly on defendant's willfulness.   See Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation, 323, F.3d 767, 773-74 (9th Cir. 2003).

## POINT II

### PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF LIQUIDATED DAMAGES.

In addition to unpaid overtime, a successful FLSA plaintiff is entitled to "liquidated damages" in the full amount of the unpaid overtime compensation.  29 U.S.C. §216(b).

"'Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the law the FLSA.'"   Jordan v. United States Postal Service, 379 F.3d 1196, 1202 (10th Cir. 2004), quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999).  Liquidated damages are mandatory unless "'the employer shows both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the Act.'" Renfro v. City of Emporia, 948 F.2d 1529, 1540 (10th Cir. 1991), quoting Doty v. Elias, 733 F.2d 720, 725 (10th Cir. 1984).  The Court in Renfro, quoting Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982), explained the employer's obligation as follows:

> "The good faith requirement mandates the employer have an honest intention to ascertain and follow the dictates of the Act." Id. The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior." Id. The employer has the plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds . . . in the absence of such a showing the district court has no discretion to mitigate an employer's statutory liability for liquidated damages.

A defendant employer's burden of proof is "a difficult one to meet." Brock v Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987).   An employer is "normally liable for both unpaid compensation" and liquidated damages.  Sinclair v. Automobile Club of Oklahoma, Inc., 733 F.2d 726, 730 (10th Cir. 1984).  "Double damages are the norm, single damages the exception. . . ."   Walton v United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986).

Under no conceivable view of the facts of this case can defendant meet its substantial burden to be excused from the normal award of liquidated damages.  On the contrary, on the undisputed facts, plaintiffs are entitled to liquidated damages as a matter of law.

**A.  Defendant did not show an honest intention to ascertain the law and follow it.**

Even *after* the consultation with Hurcomb, defendant did not show a good faith intent to comply with the law for all the reasons set forth in POINT I. A. above.   On this record, a finding of an "honest intention" to ascertain and comply with the law is impossible.   Defendant knew the law but ignored it.

**B.  Defendant had no objective basis to believe it was in compliance with the law**.

The objective element of the defense to liquidated damages requires the employer to demonstrate that its not paying the overtime required by the FLSA was based on a legal argument *objectively grounded in the law*.   Crenshaw v. Quarles Drilling Corp., 798 F.2d 1345, 1351 (10th Cir. 1986); Sinclair v. Automobile Club of Oklahoma, Inc., 733 F.2d 726, 730 (10th cir. 1984); Kellogg v. Energy Safety Services, 544 F.3d 1121, 2008 U.S. App. LEXIS 21567 (10th Cir. 2008); Thomas v. Howard University Hospital, 39 F.3d 370, 373 (D.C. Cir. 1994)("In most instances an employer will be able to satisfy § 260's 'reasonable grounds' requirement only if it has relied on a reasonable, albeit erroneous, interpretation of the Fair Labor Standards Act or the regulations issued thereunder.");  Cooper v. Martin Electric Supply Co, 940 F.2d 896, 910 (3d Cir. 1991), cert. denied, 503 U.S. 936 (1992); Bratt v. County of Los Angeles, 912 F.2d 1066, 1072 (9th Cir. 1990), cert. denied, 498 U.S. 1086 (1991) ("[D]etermining the reasonableness of the County's belief involves applying the proper interpretation of the FLSA and supporting regulations to uncontested facts. . . . ").  An employer is expected to look for, find and heed judicial authority and DOL interpretations and the failure to do so requires the award of mandatory liquidated damages.  See Caldman v. State of California, 852 F.Supp. 898, 901 (ED CA 1994) ("An employer's failure to heed administrative rulemaking or precedent with respect to the FLSA deprives the employer of the good faith defense.") "[O]nce the Department of Labor expresses an opinion on the legitimacy of an issue, an employer can no longer act to the contrary in good faith" for the purposes of

avoiding liquidated damages.  Sullivan v. Phoenix, 845 F.Supp. 698, 704 (D. AZ 1993); accord

Joiner v. Macon, 814 F.2d 1537, 1539 (11th Cir. 1987); King v. Bd of Education, 435 F.2d 295,

298 (7th Cir. 1970), cert. denied, 402 U.S. 908 (1971); National Automatic Laundry and Cleaning

Council v. Schultz, 443 F.2d 689, 697 (DC Cir. 1971)(Advice of counsel may be an element of a

good faith defense when it is not contrary to an administrative ruling."); Persky v. Cendant Corp.,

547 F.Supp.2d 152 (D. Conn. 2008).

Because an employer's objective reasonableness must be based in the law, neither

ignorance of the law nor a misunderstanding of the law meets a defendant's burden to demonstrate

a reasonable basis for believing it is in compliance with the law.  Crenshaw, supra, 798 F.2d at

1351; Sinclair, supra, 733 F.2d at 730;  Cooper Electric, supra, 940 F.2d at 908.

Based on the facts asserted by defendant itself on its motion, defendant cannot meet this

objective reasonableness burden as a matter of law.  Defendant offers no objective legal basis for

its actions and the reason is obvious: there was none.  Defendant's failure to pay overtime was not

based on the law at all.  The law was never consulted.  The mere consultation with a lawyer who is

ignorant of the law therefore cannot provide a defense to liquidated damages.  The ignorance of

the lawyer is no better than the ignorance of his client.  Because it is undisputed that defendant had

no basis in the law for its failure to pay overtime to plaintiffs, and nothing can change this fact –

indeed, defendant has already recovered from its lawyer for malpractice – summary judgment

should be granted to plaintiffs on liquidated damages.  Faustin v. City and County of Denver, 423

F.3d 1192, 1198-99 (10th Cir. 2005).

Even if Hurcomb's malpractice with respect to overtime hours  included in the day rate

could provide a defense to liquidated damages on the issue of overtime in the day rate, it could not

possibly provide a defense to other matters: the 14 hours a week that by simple arithmatic was not

covered by "built in" overtime, and the hours worked beyond the 12 hour shifts, which includes

extra work in the field, mandatory meetings, and driving time.  Defendant did not rely on

Hurcomb's advice as to these hours – in fact Rucker's email stated that work beyond the 12 hour

shift was not covered –  and there is no basis in fact to grant defendant a blanket defense to

liquidated damages as to all issues in the case.

Finally, even if defendant had shown good faith and reasonable basis in the law to believe

it was in compliance as to all the overtime it failed to pay plaintiffs, the Court still has discretion to

award liquidated damages, and should do so here.  DOL v. City of Sapulpa, 30 F.3d 1285, 1289

(10th Cir. 1994); Nero v. Industrial Molding Corp., 167 F.3d 921, 929 (5th Cir. 1999).  Liquidated

damages, which are compensatory, not punitive, should be awarded here because the consequences

of defendant's obtaining incompetent legal advice should be borne by defendant and/or its lawyer,

not plaintiffs.  The legal remedies should make plaintiffs whole, not shield defendant from

compliance with its overtime obligations to its employees.  Defendant has a remedy against its

incompetent lawyer for any damages caused by his malpractice.  Denying plaintiffs the liquidated

damages remedy on these facts creates perverse incentives to employers to seek incompetent legal

advice.   If all that were needed to avoid liquidated damages were to consult a lawyer, regardless

of the competence of the advice received, liquidated damages would never be awarded.  An

employer could violate the law knowing that the most it would be subjected to, if caught, would be

to pay what it should have paid to begin with.  The incompetent lawyer would likewise suffer no

consequences.  This is why the law is otherwise and why there must be an objective basis in the

law for the employer's actions.  Liquidated damages should be awarded on the facts of this case.

The cases cited by defendant do not support summary judgment for defendant.  Again,

none of the cases addresses facts similar to this case.  None of the cases holds or even suggests that

a court may excuse the employer of its statutory obligation to pay liquidated damages based only on the consultation with a lawyer who fails to look up the law and whose advice has no legal support.  Indeed, in <u>Roy v. County of Lexington</u>, 141 F.3d 533, 548 (4th Cir. 1998), the Court did not justify its holding on liquidated damages solely on the mere consultation with counsel.  The Court also cited defendant's "well-reasoned, sound legal arguments justifying its payment plan as to all liability issues."  <u>Id</u>.  In <u>Lee v. Coahoma County, Mississippi</u>, 937 F.2d 220, 227 (5th Cir. 1991), the defendant's counsel attended a seminar on the FLSA and consulted with the Department of Labor about the  legality of the action at issue.

## CONCLUSION

Defendant's motion for summary judgment should be denied.  Summary judgment should be granted to plaintiffs on the third year of liability and liquidated damages.  Alternatively, the motion should be denied to allow discovery.

Respectfully submitted, June 17, 2009

<div style="margin-left: 40%;">

s/Alan S. Kaufman

Alan S. Kaufman
CHAMBERLAIN, KAUFMAN & JONES

Jason M. Tangeman
NICHOLAS, & TANGEMAN, LLC

</div>