FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC – 2 2009

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| PAUL A. MUMBY, ERIC HOLTZCLAW, WILLIAM G. JOHNSON, JAHN PAZEJ, Jr., RITTA PEAVLER, JAMES G. RAUCH, JEROME G. RAUCH, DAVID REDDIN, and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PURE ENERGY SERVICES (USA), INC.,<br><br>Defendant. | Case No. 09-CV-77-J |

## ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

The above-captioned matter came before the Court by defendant's motion (Docket Entry 16). The plaintiffs responded and cross-motioned (Docket Entry 19). The Court, having read the motions and responses and being fully advised in the premises, FINDS and ORDERS that the defendant's motion should be and is GRANTED IN PART AND DENIED IN PART and that plaintiffs' motion should be and is GRANTED IN PART AND DENIED

1

IN PART, for the following reasons:

## Background

Plaintiffs brought this suit to recover unpaid overtime, liquidated damages, attorney's fees, and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Defendant ("Pure") is an oilfield services company doing business in Wyoming and plaintiffs (collectively "Employees") are its field employees, who worked twelve-hour shifts, seven days per week, three weeks on and one week off. Employees are similarly situated to the plaintiffs in *Condos v. Pure Energy Servs.*, No. 07-CV-127-J.

After hearing arguments, this Court granted the *Condos* plaintiffs partial summary judgment, finding that Pure violated the FLSA by failing to pay overtime to its employees at their regular rate plus one-half for hours they worked over forty per week. The issue in that partial summary judgment was not whether Pure failed to pay overtime, but whether the rate paid to its employees constituted a "day rate" pursuant to 29 C.F.R. § 778.112. This Court held that the rate Pure paid its employees constituted a "day rate," and the plaintiffs were owed all unpaid overtime, calculated pursuant to 29 C.F.R. §§ 778.109 and 778.112. Subsequent to this Court's order granting partial summary judgment, the parties settled.

The claims in this case are similar to those in *Condos*. However, Employees are those field employees who suffered the same compensation scheme at the hands of Pure—but were

2

not plaintiffs in *Condos*—and who have still not been compensated for their unpaid overtime.

Pure is a Colorado corporation and a wholly-owned subsidiary of Pure Energy Services, Ltd., a Canadian corporation. While originally running its operations from Canada, Pure hired its first executive in the United States, Paul Debonis, in June 2005. Pure paid its field employees in the same manner as its parent corporation had done in Canada, namely paying a day rate regardless of hours worked during scheduled twelve-hour shifts.

Pure hired Cindy Rucker to transition its payroll operations from Canada to the United States. In late December 2005, Rucker spoke to Debonis about the legality of the day rate the company was paying its field workers. Debonis instructed her to speak to Paul Hurcomb, an attorney in Colorado Springs. It is unclear whether this was the first attorney with whom Rucker spoke about Pure's compensation scheme: During Rucker's deposition in *Condos*, Rucker explained she had spoken with Sharon Rose, an Evanston attorney, on numerous occasions. Upon attempting to extract the nature of the discussions between Rose and Rucker, Pure's counsel claimed attorney-client privilege and objected to such disclosure. The content of those discussions remains unclear.

In addition to speaking with Rose, Rucker contacted Hurcomb to discuss the legality of the day rate paid to the field employees. Apparently, Hurcomb did not know what a "day rate" was, but continued to advise Rucker regarding the FLSA. Hurcomb explained to Rucker

3

that the employees must be paid overtime for all hours over forty in a workweek. Hurcomb remembers Rucker seemed familiar with that rule; and Rucker confirms she generally thought the overtime threshold was forty hours.

Hurcomb advised that the offer letters given to employees stating the day rates should include language explaining the rate's calculation stemming from eight hours of regular time and four hours of overtime, though some of the offer letters already did so. Hurcomb also advised Rucker that Pure would be compliant with the FLSA if it included the overtime hours in the day rate being paid, so long as the shifts were kept to twelve hours. (This advice led to a malpractice claim against Hurcomb, in which Pure recovered $700,000.)

Pure continued its day-rate compensation plan until after *Condos* had been filed, when it changed to hourly compensation in October 2007. At that point, Pure required employees to record actual hours worked. However, supervising employees have never been required to record, or compensated for, time spent driving to or from work sites in company vehicles. Pure also did not compensate its employees for required meetings held before or after shifts.

On April 7, 2009, Employees filed suit on behalf of themselves and all others similarly situated. On June 3, 2009, Pure filed a motion for partial summary judgment. (Docket Entry 16). On June 17, 2009, Employees filed a brief in opposition to Pure's motion and cross-moved for partial summary judgment. (Docket Entry 19). Both motions invoke two issues:

4

whether a two-year or three-year statute of limitations applies and whether liquidated damages are appropriate. In granting and denying in part both motions, the Court finds that the defendant willfully violated the FLSA with respect to payment for work hours over forty per week, subjecting it to a three-year statute of limitations. The Court further finds the defendant did not act willfully with respect to any other alleged FLSA violations, subjecting those to a two-year limitations period. Finally, the Court holds that because liquidated damages remains in the discretion of the Court, such will be decided after trial.

## Legal Standards

Summary judgment is proper when there is no genuine issue of material fact to be resolved at trial. Fed. R. Civ. P. 56(c); *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993). Thus, a district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Nelson v. Geringer*, 295 F.3d 1082, 1086 (10th Cir. 2002). "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment." *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797 (10th Cir. 1997).

In applying these standards, the district court will view the evidence in the light most

5

favorable to the party opposing summary judgment. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th

Cir. 1996). The movant bears the initial burden of demonstrating the absence of evidence to

support the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

When the non-moving party bears the burden of proof at trial, the burden then shifts to it to

demonstrate the existence of an essential element of its case. *Id*. To carry this burden, the

non-moving party must go beyond the pleadings and designate specific facts to show there

is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Ford

v. West*, 222 F.3d 767, 774 (10th Cir. 2000). The mere existence of a scintilla of evidence in

support of the non-moving party's position is insufficient to create a "genuine" issue of

disputed fact. *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

### Statute of Limitations

Under 29 U.S.C. § 255(a), claims for violations of the FLSA for unpaid compensation

must be brought within two years. However, "a cause of action arising out of a willful

violation" can be brought within three years. In this case, if Pure willfully violated the FLSA,

it owes Employees unpaid overtime compensation from April 2006 through October 2007.

However, a finding of no willfulness reduces that range to April 2007 through October 2007.

Therefore, the first question is whether Pure willfully violation the FLSA.

In *McGlaughlin v. Richland Shoe Co.*, 486 U.S. 128, 131 (1988), the United States

6

Supreme Court clarified the standard to be applied when determining the willfulness of FLSA violators. The *McGlaughlin* Court explained that to receive the benefit of the three-year statute of limitations the employee must show "the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *Id.* at 133. The determination of whether the employer knew or showed reckless disregard whether it was violating the FLSA is a "mixed question of law and fact, but . . . the factual issues predominate." *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998).

Viewing the evidence in the light most favorable to Employees, the facts show Pure willfully violated the FLSA; therefore, Pure's motion for partial summary judgement on the issue must be and is **DENIED**. Moreover, even when viewing the facts in the light most favorable to Pure, the evidence still shows Pure recklessly disregarded its FLSA violations; therefore, Employees' cross-motion for partial summary judgment is **GRANTED**.[1] A three-year statute of limitations applies to the FLSA violations based on the forty-hour workweek.

Pure argues that the fact it sought the advice of "a competent labor lawyer" is proof enough it did not know or should have known it was violating the FLSA. While reliance on counsel may add to a defensible argument under some circumstances, the facts of this case

---

[1] In the same motion (Docket Entry 19), Employees alternatively asked for discovery on the issue. That alternative motion is denied as moot.

7

are clearly distinguishable.

In late December 2005 or early January 2006, Rucker (a Pure employee) contacted

Hurcomb (a Colorado attorney) after Rucker discussed Pure's day-rate payment scheme with

Debonis (Pure's president). First, Hurcomb advised Rucker that the employees must be paid

overtime compensation for any hours they work over forty in a week. Rucker also expressed

an understanding of that requirement.

If Pure's employees had only worked five days per week for exactly twelve hours, the

employees would have been compensated for all overtime they worked:

> 8 regular hours * 5 days = 40 regular hours
> 4 overtime hours * 5 days = 20 overtime hours

But Pure's employees worked seven twelve-hour shifts per week:

> 8 regular hours * 7 days = 56 regular hours
> 4 overtime hours * 7 days = 28 overtime hours

Rucker knew (and Hurcomb advised her) that any hours over forty must be paid as overtime.

To stay under the threshold, therefore, sixteen hours per week paid regularly must have been

paid instead as overtime:

> 8 regular hours * 5 days = 40 regular hours
> 8 overtime hours * 2 days = 16 overtime hours
> 4 overtime hours * 7 days = 28 overtime hours[2]

---

[2] This calculation does not show what Pure actually owes Employees; it merely shows what Pure should have paid its employees at the time if they worked seven twelve-hour shifts per week.

Therefore, the twelve-hour, seven-day payment scheme was in direct conflict with the requirement that all hours over forty must be paid as overtime. From this simple arithmetic exercise, Pure showed a reckless disregard that its compensation system violated the FLSA overtime requirements.

Second, Hurcomb's advice to Rucker was that their implemented day rate was statutorily valid only if the employees were kept to twelve-hour shifts. Rucker explained the same via email to Debonis, an operations manager, marketing manager, and payroll employee. No one from Pure informed field supervisors or field employees to cease work past their twelve-hour shifts or record such hours for payment. Moreover, Pure knew that employees sometimes worked more than their twelve-hour shifts and for no extra pay, but did nothing to remedy the situation. Therefore, Pure did not rely on Hurcomb's advice to stay under twelve hours, so much as it ignored the advice: a reckless disregard of the violation.

Third, Pure relies heavily on the fact that it consulted with an attorney to prove its lack of willfulness. Neither the Supreme Court, nor the Tenth Circuit has ruled that seeking legal advice *ipso facto* proves a lack of willfully violating the FLSA. In fact, the Supreme Court in *McGlaughlin* rejected a proposed test for willfulness that would "make the issue in most cases turn on whether the employer sought legal advice concerning its pay practices." 486 U.S. at 134–35. Such a test would be illogical: a defendant could dodge liability by lawyer-

9

shopping after or while breaking the law.

Moreover, the cases Pure cites to support its proposition are distinguishable. In *Fowler v. Incor*, 279 Fed. Appx. 590, 2008 WL 2019598 (10th Cir. 2008) (unpublished), the Tenth Circuit upheld summary judgment applying the two-year statute of limitations for lack of willfulness. Incor, the employer, sought the advice of industry consultants and state officials. Moreover, Incor implemented a policy that was in widespread use in the state and elsewhere. The Tenth Circuit explained, "Admittedly, Incor did not consult a lawyer or investigate the lawsuits against other service providers, however this is not enough to prove recklessness." *Id.* at 602. That decision is unpublished and therefore not binding precedent. Furthermore, the court did not create a bright-line rule that consultation with an attorney proves the absence of willfulness; it merely recognized that doing so under the circumstances (on top of the defendant's consultation with industry consultants and state officials) would have provided more support for the defendant's position.

Pure next cites *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985). In *Thurston*, the Supreme Court held the standard for willfulness under the Age Discrimination in Employment Act ("ADEA") was knowledge or showing reckless disregard for the violation. As Pure notes, *Thurston* is the case the Court relied upon for determining the FLSA willfulness standard. However, Pure also claims, "[T]he Supreme Court ruled that

10

there could be no willful violation where an employer consults with a lawyer to determine the legality of its course of action." *Thurston* does not stand for that proposition.

In applying its willfulness standard to the specific facts of the case, the *Thurston* Court held that TWA had not been willful. But again, the facts are distinguishable. In *Thurston*, TWA had in place a mandatory retirement, which at the time was legal under the ADEA. Congress then amended the law, making the mandatory retirement illegal. After Congress passed the amendment, TWA sought legal advice and learned they needed to adapt to meet the law. TWA met with its attorneys and union leaders during negotiations for its changes. The Court held—under those specific facts—TWA's drawn out efforts to comply with the recently amended ADEA showed the violation was not willful.

Pure also cites several other published and unpublished district court opinions. Not one of those cases held that mere consultation with an attorney required a finding of the absence of willfulness for violating the FLSA. One found no willfulness based on the particular facts, *Huss v. City of Huntington Beach*, 317 F. Supp. 2d 1151, 1161 (C.D. Cal. 2000), one because the plaintiff failed to present evidence on the issue, *Nelson v. Waste Mgmt. of Alameda County, Inc.*, 2000 WL 868523, at *4 (N.D. Cal. 2000) (unpublished). And one referred to liquidated damages, not willfulness. *Lane v. M.S. Pub, Inc.*, 435 F. Supp. 917, 920 (D. Neb. 1977). Moreover, not a single one of these decisions involved a situation

11

where the defendant only partially followed the attorney's advice and successfully sued the attorney for malpractice.

Because Pure rests solely on the fact that it sought out an attorney as proof it did not act willfully, and none of the case law it cites supports such a proposition, its motion for partial summary judgement must fail. No genuine issues of material fact exist: It is undisputed that Pure sought out Hurcomb for advice regarding its day-rate compensation scheme. It is further undisputed that Hurcomb advised Rucker that employees must be paid for all hours worked over forty per week, and that Pure did not do so. Moreover, it is undisputed that Hurcomb advised Rucker its day rate did not violate the FLSA, but only if the employees were kept to twelve-hour shifts.[3] While Rucker informed four other employees at Pure of the caveat, Pure did not implement a system to ensure a maximum of twelve hours were worked per shift. These facts, in the light most favorable to Pure, prove that Pure showed a reckless disregard for violating the FLSA.

Finally, willfulness can only be decided in Employees' favor with respect to their claim of Pure's FLSA violation for the uncompensated hourly overtime for hours over forty per week. Employees, however, also claim unpaid compensation for work time based on supervisors driving company vehicles while transporting crews and supplies, as well as for

---

[3] It is of no consequence for this motion that Hurcomb's advice proved incorrect. Pure relies solely on the fact it sought his advice; however, Pure failed to actually follow that advice.

all employees who attended mandatory pre- and post-shift meetings. Employees have not

presented evidence to support a willful FLSA violation for either of these claims. Viewed in

the light most favorable to Pure, the facts do not support willfulness by Pure for these alleged

FLSA violations. Moreover, when those facts are viewed in the light most favorable to

Employees, they still do not support a claim of a willful violation by Pure. Therefore Pure's

motion for partial summary judgment must be granted and Employees' motion for partial

summary judgment must be denied. The two-year statute of limitations applies to those

alleged violations.

## Liquidated Damages

Under 29 U.S.C § 216(b), an employer who violates the FLSA is liable to the affected

employees in the amount of their unpaid overtime wages plus "an additional equal amount

as liquidated damages." However, Congress also left discretionary authority to the courts in

awarding such liquidated damages: 29 U.S.C. § 260 explains,

[I]f the employer shows to the satisfaction of the court that the act or omission
giving rise to such action was in good faith and that he had reasonable grounds
for believing that his act or omission was not a violation of the [FLSA], the
court may, in its sound discretion, award no liquidated damages or award any
amount thereof not to exceed the amount specified in section 216 of this title.

Therefore, liquidated damages are appropriate in every case where an employer

violated the FLSA. But a court may limit, deny, or award full liquidated damages when the

employer shows good faith and a reasonable belief the actions did not violate the FLSA. Discretion lies with the district court if the employer can show good faith and reasonable belief. *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1136 (10th Cir. 2000). The burden lies with Pure to prove good faith and reasonable belief. *Dept. of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994).

Much like the case for willfulness, no Tenth Circuit or Supreme Court case states that reliance on an attorney alone proves good faith and reasonable belief. Even if one existed, the statute calls for the court to apply its discretion in limiting or denying liquidated damages. Based on the circumstances, even a finding of good faith and reasonable belief could justifiably result in a court awarding liquidated damages.

"The good faith requirement mandates the employer have an honest intention to ascertain and follow the dictates of the [FLSA]." *Id.* (quotations and citations omitted). Pure claims it subjectively intended to adhere to the FLSA. Pure points to the fact it sent Rucker to see a labor lawyer as proof of its good faith. Without evidence to the contrary, good faith is established in this case.

However, good faith alone is not enough to give the court discretion to limit or deny liquidated damages; Pure must also have a reasonable belief its actions were in conformance with the FLSA. *Id.* Reasonable belief is an objective standard. *Id.* As similarly discussed

14

during the application of the willfulness standard, Pure cannot successfully claim its failure to pay overtime was reasonable merely because it asked an attorney about a day rate.

Again, Pure points only to cases where the Tenth Circuit mentions the fact that the defendant did not seek counsel as proof of its own reasonableness. But none of those cases stand for the proposition that seeking out an attorney is, by itself, proof of reasonableness. One district court recognized that "a defense based on advice of counsel *might be* sufficient to avoid liability for liquidated damages." *Rogers v. Savings First Mortgage, LLC*, 362 F. Supp. 2d 624, 638 (D. Md. 2005) (emphasis added). Another recognized, "The fact that an employer acts on advice of counsel *may* provide *one reason* to deny liquidated damages." *Horan v. King County*, 740 F. Supp. 1471, 1482 (W.D. Wash. 1990) (emphasis added). Pure does not point to a single case—precedential or persuasive—that holds mere consultation with an attorney proves either good faith or reasonableness. On the contrary, Employees point to several courts who have considered whether seeking advice of counsel alone establishes good faith and reasonableness, and each holds in the negative. *See, e.g.*, *Uffelman v. Lonestar Steel Co.*, 863 F.2d 404, 409 (5th Cir. 1989).

Without more, Pure fails to satisfy its burden of proving it acted reasonably and in good faith. Even if Pure could satisfy its burden, the Court is not required to limit or deny liquidated damages, as the statute grants this Court discretion. Therefore, Pure's motion to

deny liquidated damages as a matter of law is **DENIED**. However, because the other

damages are still at issue, and the statute grants liquidated damages automatically, unless the

Court in its discretion chooses to limit them, Employees' cross-motion asking for an award

of liquidated damages as a matter of law is also **DENIED**. Such a discretionary decision will

be made after trial.

THEREFORE, the Court finds as a matter of law the following Findings of Fact and

Conclusions of Law:

### Findings of Fact

1.  Employees seek unpaid overtime compensation and other relief under the provisions
    of the FLSA, 29 U.S.C. § 207.

2.  Employees are or were employed by defendant, Pure Energy Services.

3.  Pure is a Colorado corporation and wholly owned subsidiary of a Canadian company
    that performs oilfield services in Colorado, Wyoming, and North Dakota.

4.  Employees are similarly situated to the plaintiffs in *Condos v. Pure Energy Servs.*,
    No. 07-CV-127-J.

5.  This Court in *Condos* held that Pure failed to compensate the plaintiffs for overtime
    as required by the FLSA. *Condos* was subsequently settled.

6.  Pure presented Employees with written employment terms stating they would be paid
    a day rate for each day ticketed to a client for work in the fields. Some terms stated
    the day rate was calculated using eight hours of regular time and four hours of
    overtime, others stated no such calculation.

7.    Aside from when they were assigned to work in the shop, Employees were scheduled to work and did work twelve-hour shifts in the oil fields, seven days a week.

8.    Pure compensated Employees at an agreed day rate for each day worked in the oil fields, regardless of the actual number of hours worked by Employees each day or in each workweek.

9.    Pure did not keep records of the actual number of hours Employees worked but knew Employees sometimes worked more than their scheduled shifts.

10.   In workweeks in which Employees worked over forty hours in oil fields and were paid by a day rate for each day ticketed to a client, Pure did not pay Employees any additional compensation above the day rate set forth in the employment terms.

11.   In December 2005, Pure hired Cindy Rucker to transition the payroll function that had previously been performed in Canada to the U.S.

12.   At the direction of Paul Debonis, Pure's president, Rucker contacted Paul Hurcomb, a Colorado lawyer to discuss Pure's day rate compensation.

13.   While Hurcomb did not know the meaning of "day rate," he advised Rucker that such payment was proper under the FLSA if the day rate included eight hours of regular time and four hours of overtime, so long as Pure kept its employees to twelve-hour shifts.

14.   Hurcomb also advised Rucker that all hours worked over forty per week were required to be compensated as overtime. Rucker understood this requirement.

15.   Rucker informed four other Pure employees the day rate was legal under FLSA as long as its employees did not exceed their twelve hour shifts.

16.   Rucker did not inform anyone else at Pure that all work over forty hours per workweek must be compensated as overtime.

17.     After Rucker contacted Hurcomb, Pure made no effort to record or compensate its
        employees for work time over their scheduled twelve-hour shifts or over forty hours
        per week until after the filing of *Condos*; Pure changed its compensation scheme in
        October 2007.

18.     Pure did not compensate its supervising employees for time spent driving to or from
        work sites in company vehicles or any employees for mandatory meetings.

## Conclusions of Law

1.      The period of limitations in an FLSA action is two years, unless Employees prove
        Pure's violation was "willful,"in which case the period of limitations is three years.
        29 U.S.C. § 255(a).

2.      In order for the violation to be willful, Employees must prove that Pure "knew or
        showed reckless disregard for whether its conduct was prohibited by the statute."
        *McLaughlin*, 486 U.S. at 133.

3.      Pure received advice from an attorney that its day rate was legal if its employees were
        kept to twelve-hour shifts. While the advice ultimately was incorrect, Pure took no
        steps to ensure a twelve-hour maximum or to record hours beyond the twelve hours.

4.      Pure received advice from the same attorney that its employees must be paid overtime
        for all hours worked over forty per week. Pure's twelve-hour, seven-day workweek
        did not compensate all hours over forty, and Pure did not record the number of hours
        worked over forty.

5.      No Supreme Court or Tenth Circuit case law indicates mere consultation with an
        attorney proves a lack of willfulness.

6.      Pure showed reckless disregard for its FLSA violation by failing to follow the advice
        of counsel to pay overtime for all hours over forty or in excess of its twelve-hour
        shifts. A three-year statute of limitations applies to these claims.

18

7.  Employees failed to present evidence that Pure willfully violated the FLSA by not paying supervisors for driving company vehicles or employees for attending mandatory meetings. A two-year statute of limitations applies to these claims.

8.  A successful FLSA plaintiff is entitled to both unpaid overtime compensation and liquidated damages. 29 U.S.C. § 216(b).

9.  A court may, in its discretion, limit, deny, or award full liquidated damages if the employer can show its violation was in good faith and it had reasonable grounds for believing it had not violated the FLSA. 29 U.S.C. § 260.

10. While Pure points to the fact it sought legal advice to prove its good faith and reasonable belief, no Supreme Court or Tenth Circuit case law mandates mere consultation with an attorney proves both good faith and reasonable belief.

11. While consulting with an attorney can show an honest intention to follow the dictates of the FLSA, Pure's failure to follow that advice by paying Employees overtime for all hours worked over forty in a week or by limiting Employees to their twelve-hour shifts fails the reasonable belief requirement.

12. Because this Court has discretion to limit, deny, or award the default liquidated damages, and compensatory damages have yet to be calculated, liquidated damages will be limited, denied, or awarded in full after trial.

Accordingly, it is therefore

**ORDERED** that the Defendant's Motion for Partial Summary Judgment (Docket

Entry 16) should be, and is, **GRANTED IN PART AND DENIED IN PART** and that

Plaintiffs' Memorandum in Opposition and Cross-Motion for Partial Summary Judgment

(Docket Entry 19) should be and is **GRANTED IN PART AND DENIED IN PART**.

Dated this ___ $5t$ day of December, 2009.

ALAN B. JOHNSON

UNITED STATES DISTRICT JUDGE